**FEDERATED MUTUAL IMPLEMENT AND HARDWARE INSURANCE COMPANY, and Western Mutual Insurance Company, Appellants,**

**v.**

**Leonard DUNKELBERGER, d/b/a C'Ville Tap, Appellee.**

**No. 53501.**

Supreme Court of Iowa.

Nov. 12, 1969.

Duncan, Jones, Riley & Davis, by Randy Duncan, Jr., and Thomas A. Finley, Des Moines, for appellants.

Herrick, Langdon, Belin & Harris, by Richard G. Langdon, Des Moines, for appellee.

GARFIELD, Chief Justice.

Plaintiffs appeal from dismissal of their petition at law in seven divisions seeking money damages from defendant-liquor licensee under the Iowa dram shop statutes, sections 129.2 and 123.95 Code 1966, and common law.

The ruling was based on defendant's motion to dismiss the petition on the ground each division failed to state a cause of action. The motion admitted the truth of all well pleaded, issuable and relevant facts in the petition and such facts are taken as true upon this appeal. Hagenson v. United Telephone Co., Iowa, 164 N.W.2d 853, 855–856 and citations.

The case arose out of a motor vehicle collision between an automobile owned by Boyd's Inc., driven by Philip Beckerdite and one owned and driven by Dale McDermott in which Marjorie Kroll was a passenger. Both drivers were killed and Marjorie Kroll was severely injured.

The first six divisions of the petition all allege Beckerdite was on the wrong side of

the highway when the vehicles collided, was negligent and also intoxicated from liquor defendant soíd him in his taproom when he was intoxicated or to a point where he became intoxicated about a half hour before the collision.

Plaintiff, Federated, etc. Insurance Co., was the insurance carrier for the owner of the car Beckerdite was driving. Plaintiff, Western Mutual Insurance Co., was the insurer of Beckerdite. (We refer to plaintiffs as Federated and Western respectively.) The petition further alleges plaintiffs investigated the accident and as a result thereof paid $40,000 to Marjorie Kroll for a release of the damages suffered by her in the accident and $27,730 to the administrator of the estate of Dale McDermott for a release of the damages suffered by the estate therein; that Western paid one third and Federated two thirds of the total amount of $67,730.

Both plaintiffs seek contribution and/or indemnity, both jointly and severally, from defendant for the amount so paid under the Iowa dram shop statutes.

Both plaintiffs also seek money damages, both jointly and severally, from defendant under the dram shop statutes as other persons injured in their property resulting from the intoxication of Beckerdite.

In the seventh division of their petition plaintiffs jointly seek indemnity and/or contribution from defendant under common law negligence.

· The trial court first overruled the motion as to all divisions of the petition except the last one based upon common law negligence. Later, however, on defendant's motion to reconsider the previous ruling, the petition was dismissed in its entirety.

I. At common law it was generally held there was no cause of action against one who furnished liquor to an intoxicated person in favor of such a person or those injured by him. Cowman v. Hansen, 250 Iowa 358, 368, 92 N.W.2d 682, 688; Wen-

delin v. Russell, 259 Iowa 1152, 1154–1155, 147 N.W.2d 188, 190; 45 Am.Jur.2d, Intoxicating Liquors, section 553.

To supply this defect in the common law many states, including Iowa, have enacted statutes giving a right of action to persons injured in person, property or means of support by an intoxicated person, or resulting from the intoxication of any such person, against the person selling or furnishing the liquor which caused the intoxication in whole or in part. These statutes, commonly known as "civil damage acts" or "dram shop acts" afford remedies unknown to the common law. Wendelin v. Russell, supra; 45 Am.Jur.2d, Intoxicating Liquors, section 561.

We have two such statutes in this state. The older one is. section 129.2 Codes 1962, 1966 which reads:

"Every wife, child, parent, guardian, employer, or other person who shall be injured in person or property or means of support by any intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action in his or her own name against any person who shall, by selling or giving to another contrary to the provisions of this title any intoxicating liquors, cause the intoxication of such person, for all damages actually sustained, as well as exemplary damages."

The later statute, section 123.95, which does not repeal the former one, provides:

"Every husband, wife, child, parent, guardian, employer or other person who shall be injured in person or property or means of support by any intoxicated person or resulting from the intoxication of any such person, shall have a right of action, severally or jointly against any licensee or permittee who shall sell or give any beer or intoxicating liquor to any such person while he is intoxicated, or serve any such person to a point where such person is intoxicated for all damages actually sustained.

"Every liquor control licensee shall furnish proof of financial responsibility either by the existence of a liability insurance policy or by posting bond in such amount as determined by the commission."

For a discussion of the self-evident points of difference between the old and the new statutes, see Wendelin v. Russell, supra, at pages 1161–1162 of 259 Iowa, page 194 of 147 N.W.2d. And for a somewhat longer discussion see 13 Drake Law Review 168.

■ The authorities in other states are not agreed as to whether dram shop acts are to be strictly or liberally construed. 45 Am.Jur.2d, Intoxicating Liquors, section 562, page 860. It must be deemed settled in Iowa, however, that section 123.95 is to be liberally construed, as similar statutes are in many other states.

Section 4.2 Code 1966 provides "The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this Code. Its provisions and all proceedings under it shall be liberally construed with a view to promote its objects and assist the parties in obtaining justice. * * *." To like effect and even more important here is Code section 123.1.

After quoting section 4.2 supra, Wendelin v. Russell, supra, referring to section 123.95, continues at pages 1157–1158 of 259 Iowa, page 192 of 147 N.W.2d:

"In addition it is evident the subject act should be construed liberally to aid in suppressing the mischief and advance the remedial objective which prompted its enactment. To uphold defendants' position would require the application of strict rules of construction which would, in effect, serve to advance the mischief and impair the remedy.

"Section 123.95, as finally adopted, was designed to place a hand of restraint upon those licensed or permitted by law to sell or supply intoxicants to others and protect the public, but above all to provide an avenue of relief to those offended who had no recourse or right of action under the common law. (citations)

"It is primarily a remedial or compensatory law, imposing liability without regard to all the elements of injury actionable at common law. (citations)"

The question of liberal construction of such a statute as 123.95 seems to arise most often in determining the meaning of the words "other person injured in person or property" or like language. The Wendelin opinion holds one killed by a driver who became intoxicated from liquor sold him by defendant-tavern operators came within the class of such "other person," that his cause of action against the tavern owners under 123.95 survived his death and could be enforced by his executrix.

This from Wendelin v. Russell (at page 1159 of 259 Iowa, pages 192–193 of 147 N. W.2d) is deemed important here, especially as to whether Boyd's, Inc., owner of the car driven by Beckerdite, came within the class "other person injured in * * * property:"

"It is thus evident section 123.95 means: Every husband, every wife, every child, every parent, every guardian, every employer, or every other person injured in person or property or means of support by any intoxicated person or resulting from the intoxication of any such person, shall have a right of action. See Village of Brooten v. Cudahy Packing Company, 8 Cir. [Minn.], 291 F.2d 284, 295. (other citations).

"* * * Under these circumstances the rule of Ejusdem Generis cannot be said to be here applicable."

■ Considering somewhat further the matter of Ejusdem Generis, the rule is that where specific words *of the same nature* in a statute are followed by general words the latter take their meaning from the specific words and comprehend only those things of the same kind as the specific ones. State

v. Cusick, 248 Iowa 1168, 1171–1172, 84 N.W.2d 554, 556 and citations.

That the rule applies only where the specific words relate to a single class, character or nature see also Village of Brooten v. Cudahy Packing Co., supra, 8 Cir., Minn., 291 F.2d 284, 298; State v. Wells, 146 Ohio St. 131, 64 N.E.2d 593, 595; In re Mosby's Appeal, 360 Mich. 186, 103 N.W.2d 462, 465; 82 C.J.S. Statutes, § 332b, page 665, and citations n. 63; 50 Am.Jur., Statutes, section 250, page 248. Further, the rule is not to be applied inflexibly but is subject to the manifest intent of the legislature. Village of Brooten case, supra.

Regarding a Minnesota statute very similar to our 123.95, the Brooten opinion says: "While the first five beneficiaries named in § 645.08 do have blood or marriage relationship in common and thus could be said to constitute a class, the succeeding term 'employer' is different, destroys any category of that kind, and opens the way to a broader interpretation of 'other person'." Wendelin v. Russell, supra, cites the Brooten case approvingly for the proposition the rule of Ejusdem Generis was not there applicable. (page 1159 of 259 Iowa, page 192 of 147 N.W.2d). If it was not applicable in Wendelin it is clear it is not to be applied here.

■ II. We consider now whether Boyd's, Inc., owner of the car Beckerdite (the intoxicated driver) was operating at the time of the collision, comes within the term "other person * * * injured in * * * property," as used in section 123.-95. We think it does.

The liability of Boyd's to Marjorie Kroll and the McDermott estate was vicarious and arose from the negligence of Beckerdite and defendant's violation of 123.95, by reason of Code section 321.493 which provides: "In all cases where damage is done by any motor vehicle by reason of negligence of the driver, and driven with the consent of the owner, the owner of the motor vehicle shall be liable for such damage."

Nothing in the petition indicates Boyd's, Inc. was in any way responsible for Beckerdite's becoming intoxicated from liquor served him in defendant's tavern nor that it would have been liable for damages caused by the collision in the absence of section 321.493, supra. In short, Boyd's was an innocent party. Certainly it was not guilty of intentional wrong or moral turpitude. See Best v. Yerkes, 247 Iowa 800, 810, 77 N.W.2d 23, 29, 60 A.L.R.2d 1354, 1362; Hawkeye Security Ins. Co. v. Lowe Construction Co., 251 Iowa 27, 31, 99 N.W.2d 421, 425.

We note section 123.5(6) provides that for interpreting chapter 123 (including, of course, section 123.95), unless the context indicates a different meaning, "'Person' includes any natural person, association, partnership, corporation, and club." See also Dworak for Use of Allstate Ins. Co. v. Tempel, 18 Ill.App.2d 225, 152 N.E.2d 197, 200; McDaniel v. Crapo, 326 Mich. 555, 40 N.W.2d 724, 726; 48 Iowa Law Review, 193, 195.

■■ An injury "in property" need not be a direct physical injury to property to be compensable. A claimant is usually required to show only a lessening of his total assets because of the intoxication of another in order to state a cause of action against the vendor of the liquor which caused the intoxication. 48 Iowa Law Review, 193, 195 and citations notes 9 and 10.

Upon making settlement with the McDermott estate and the injured Marjorie Kroll, as required by its contract of insurance, Federated became subrogated to the rights of its insured (Boyd's) to recover indemnity from defendant dram shop owner whose violation of section 123.95 is alleged to have been a proximate cause of the collision and resulting damage. There are two recognized bases on which Boyd's subrogee is entitled to indemnity.

The first of these is that as previously explained, Boyd's liability is vicarious and arose under section 321.493, supra. The situation is analogous to that in Rozmajzl v. Northland Greyhound Lines, 242 Iowa 1135, 1143, 49 N.W.2d 501, 506 and citations; Article by Eugene Davis on "Indemnity Between Negligent Tortfeasors: A Proposed Rationale", 37 Iowa Law Review 517, 519-522.

The second basis of Boyd's right to indemnity from defendant is that the latter's alleged violation of the dram shop act amounts to active or positive negligence while the former was guilty, if at all, of only passive negligence. These terms are sometimes referred to as primary and secondary negligence, respectively.

The Rozmajzl opinion, supra, contains this: "Indemnity is also frequently allowed a party guilty of passive negligence against one guilty of active or positive negligence. (citations)

"It is broadly stated that 'where one is compelled to pay money which in justice another ought to pay * * * the former may recover from the latter the sums so paid, unless the one making the payment is barred by the wrongful nature of his conduct.' (citations)."

■ We may observe that, as here used, the difference between "contribution" and "indemnity", briefly stated, is that the former indicates liability for loss occasioned by a tort is shared by those responsible for it. "Indemnity" indicates the entire liability for loss is shifted from one person held legally responsible to another person. Article, supra, in 37 Iowa Law Review 517; Article by Professor Dale B. Furnish on "Distributing Tort Liability: Contribution and Indemnity in Iowa", 52 Iowa Law Review 31, 33; 41 Am.Jur., 2d, Indemnity, section 3.

■ III. We must hold Beckerdite did not come within the term "other person," found in section 123.95. Evans v. Kennedy, Iowa, 162 N.W.2d 182, is direct authority for this and that the administrator of his estate would have no greater rights to recover as an "other person" under the dram shop statutes than would the intoxicated driver himself. Since the rights of Western, Beckerdite's insurer, as subrogee of the latter rise no higher than his, it follows that Western cannot recover indemnity against defendant as Federated can as subrogee of its insured, Boyd.

■ But this does not preclude the right of Beckerdite or his insurer and subrogee to recover contribution from defendant. This is a question we have never decided. Several Minnesota cases held the intoxicated driver had no right to recover under its dram shop law against the illegal seller of liquor for injury sustained as a result of the former's voluntary intoxication and that his insurer, as his subrogee, had no greater right. In Farmers Insurance Exchange v. Village of Hewitt, 274 Minn. 246, 143 N.W.2d 230, 233-234, the court was confronted with the question whether the intoxicated driver or his insurer who had paid damages to a third person injured by the driver could recover contribution from the vendor of the liquor. The court answered in the affirmative.

■ We approve this from the cited opinion: "Contribution rests on common liability, not on joint negligence or joint tort. Common liability exists when two or more actors are liable to an injured party for the same damages, even though their liability may rest on different grounds. * * *

"Here it would seem that there is no question that the driver of the automobile and the vendor making the illegal sale of intoxicating liquor are jointly liable to the injured parties. It is true that liability rests on different legal grounds. One rests on common-law negligence and the other on the Civil Damage Act. But the liability of both is common to the injured party. Action for recovery against one does not bar action against the other, but there can

be no double recovery and payment by one relieves the other pro tanto of liability up to the amount paid. We have held in several cases that plaintiff is entitled to only one full recovery, and if one of the tortfeasors is sued first, whatever is recovered in that action must be offset against any recovery against the other tortfeasor in a subsequent action. If it is true that one full recovery sets the limit against both tortfeasors, the question naturally arises— why should they not each be liable for their fair share inter se, whether they are sued in the same action or separately, when the action is finally determined or settled so there can be no further action against any of the parties?"

Wendelin v. Russell, supra, 259 Iowa 1152, 1160, 147 N.W.2d 188, 193 cites the Village of Hewitt opinion with approval on the procedural point referred to in the above quotation. See also Greiner v. Hicks, 231 Iowa 141, 146, 300 N.W. 727, 731.

Skaja v. Andrews Hotel Co., 281 Minn. 417, 161 N.W.2d 657, 659, 661, follows the Village of Hewitt case, supra, and approves what is said in Village of Brooten v. Cudahy Packing Co., supra, 8 Cir., Minn., 291 F.2d 284, as to the broad social purposes to be served by the Minnesota dram shop law. See also on this last point Turk v. Long Branch Saloon, Inc., 280 Minn. 438, 159 N.W.2d 903, 905, especially footnote 1, page 905.

All the necessary elements of an action for contribution against defendant in favor of Western are alleged in plaintiffs' petition. There was common liability of Beckerdite's estate and defendant to Marjorie Kroll and the McDermott estate. Beckerdite and defendant were concurrent tortfeasors. The fact the former was guilty of common law negligence and the latter's liability to those with whom plaintiffs settled, arose from his violation of section 123.95 does not preclude the right to contribution by the subrogee of Beckerdite's estate. Western paid a third of what both

plaintiffs were able to settle both claims for. Defendant has paid nothing.

If the allegations of plaintiffs' petition are accepted as true defendant should contribute his fair share of what Western paid. See Best v. Yerkes, supra, 247 Iowa 800, 810, 77 N.W.2d 23, 29, 60 A.L.R.2d 1354, 1362, and Anno. 1366, 1377; Constantine v. Scheidel, 249 Iowa 953, 956, 90 N.W.2d 10, 12; Hawkeye-Security Ins. Co. v. Lowe Construction Co., supra, 251 Iowa 27, 31, 99 N.W.2d 421, 425; Fane v. Hootman, 254 Iowa 241, 117 N.W.2d 435; Iowa Power & Light Co. v. Abild Constr. Co., 259 Iowa 314, 319, 144 N.W.2d 303, 306 and citations.

(No question of special defense to an action by Marjorie Kroll or the McDermott estate which might be available to defendant is present here as it was in Abild and Shonka v. Campbell, 260 Iowa 1178, 152 N.W.2d 242.)

▮ That plaintiffs settled the claims before action was brought thereon or judgment obtained does not make the payment voluntary nor bar Western's right to contribution. Hawkeye-Security Insurance Co. v. Lowe Construction Co., supra, 251 Iowa 27, 35, 99 N.W.2d 421, 427 and citations; Allied Mutual Cas. Co. v. Long, 252 Iowa 829, 833, 107 N.W.2d 682, 684. See also Fane v. Hootman, supra.

▮ IV. We shall not extend this opinion to comment on all the grounds of defendant's motion to dismiss although they have been carefully considered, as well as the authorities defendant cites, many of which plaintiffs also cite. One ground of the motion is that neither plaintiff could recover because defendant's sale of liquor to Beckerdite could not be the proximate cause of the collision and resulting death of McDermott and injury to Marjorie Kroll.

We think the petition was not subject to dismissal on this ground. As before indicated, it alleges defendant negligently and unlawfully sold liquor to Beckerdite when

he was intoxicated or to a point where he became intoxicated a half hour before the collision and such sale was a proximate cause of the collision which occurred a few miles from the small town where the tap-room was located.

Restatement, Second, Torts, section 431, states: "The actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability be-cause of the manner in which his negli-gence has resulted in the harm."

Section 435 of the Restatement says: "If the actor's conduct is a substantial fac-tor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable."

Commencing with Frederick v. Goff, 251 Iowa 290, 298, 100 N.W.2d 624, 629, we have approved these statements or ones to like effect in at least ten opinions. It is sufficient to cite Lockwood v. Wiltgen, 251 Iowa 484, 490–492, 101 N.W.2d 724, 728–729; Van Aernam v. Nielsen, Iowa, 157 N.W.2d 138, 143; Naxera v. Wathan, Iowa, 159 N.W.2d 513, 521. Van Aernam v. Nielsen expressly approves what was said on the subject of proximate cause in Frederick v. Goff, supra.

Swaim v. Chicago, R. I. & P. Ry. Co., 187 Iowa 466, 471, 174 N.W. 384, 386, (cert. den. 252 U.S. 577, 40 S.Ct. 344, 64 L.Ed. 725) used language more than 50 years ago quite similar to that quoted from the Restatement.

For decisions in many other jurisdictions which have adopted the American Law In-stitute's test of what constitutes legal or proximate cause of harm see 65 C.J.S. Negligence (1966 vol.) § 107b, pages 1157–1158, n. 6 and 1969 pocket part.

Generally the question of proxi-mate cause is for the jury; it is only in exceptional cases that it may be decided as a matter of law. Rule 344(f) (10) Rules of Civil Procedure. We are clear that if the allegations of plaintiffs' petition are taken as true the issue of whether defend-ant's sale of liquor to Beckerdite was a proximate cause of the injury to Marjorie Kroll and the death of McDermott would be for the jury.

For further proceedings consistent with this opinion the cause is

Reversed and remanded.

All Justices concur.