**STATE of Iowa, Appellant,**

**v.**

**Michael Gene BOND, Appellee.**

**No. 91–1280.**

Supreme Court of Iowa.

Dec. 23, 1992.

Bonnie J. Campbell, Atty. Gen., Bridget A. Chambers, Asst. Atty. Gen., Lawrence A. Stumme, Jr., Sp. Prosecutor, and Thomas J. Ferguson, County Atty., for appellant.

Linda Del Gallo, State Appellate Defender, and Patricia Reynolds Lapointe, Asst. State Appellate Defender, for appellee.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, LAVORATO, and ANDREASEN, JJ.

PER CURIAM.

The question in the present case is whether the substance Toluene is a "drug" for the purposes of Iowa Code section 321J.2 (1991). The trial court held that it was not. We believe it is, and therefore we reverse the judgment of the district court.

On May 11, 1990, Deputy Rick Dolleslager stopped a vehicle driven by the defendant, Michael Bond, after Bond's vehicle almost forced the police vehicle into a median strip. As the deputy got out of his car to approach Bond, the deputy noted that Bond appeared to be slumped over his steering wheel. As the deputy approached, Bond began to slowly drive away. The deputy ran back to his car and followed Bond, his red lights flashing continuously. Bond drove no faster than ten to fifteen miles per hour. After traveling several blocks, Bond stopped his vehicle.

The deputy approached Bond and noted that he appeared to be lethargic and very sleepy. When the deputy explained to Bond that he had stopped Bond because of his erratic driving, Bond appeared to have difficulty understanding him. The deputy detected the odor of airplane glue both in the car and on Bond. The officer then asked Bond to perform three field sobriety tests. He failed all three. Bond denied using alcohol or drugs.

The officer arrested Bond and began an inventory search of his car. The search revealed a gallon can of solvent in the back seat, plastic baggies in the front seat and a glass jar containing a clear fluid on the floorboard of the driver's seat. Each contained a substance that smelled like airplane glue. Thereafter, two more baggies with the airplane glue odor were found in Bond's pocket.

While at the sheriff's department, the deputy obtained a urine sample from Bond. The test results indicated that Bond had a blood alcohol content of .083. It was later determined that Bond did not have alcohol in his system at the time, but a substance named Toluene.

On June 15, 1990, a trial information charged Bond with operating while intoxicated, first offense, in violation of section 321J.2. On November 30, 1990, Bond filed a motion for determination of whether Toluene is a "drug" for purposes of 321J.2. Initially, the district court determined that Toluene was a "drug" for purposes of section 321J.2 and overruled Bond's motion for determination that it was not. Due to the death of a juror, however, a mistrial was declared.

The case proceeded to trial with a new presiding judge. At trial, Michael Rehberg, the administrator of the State Crime Lab of the Department of Public Safety and a forensic toxicologist, testified on the effects of Toluene. When inhaled, it is acted upon by the liver and inhibits the blood's ability to accept oxygen and carry it to the body's tissues. It produces symptoms of lethargy and inhibition of physical abilities. It also lengthens reaction time and attentiveness.

After the State rested its case, Bond moved for a directed verdict and judgment of acquittal. The State did not resist judgment of acquittal on the alternative means involving alcohol; however, it did resist Bond's motion as it related to intoxication by a drug. The court ruled that Toluene is not a drug for the purposes of section

321J.2 and that operating while under the influence of Toluene is not a prohibited act under section 321J.2. Accordingly, the court granted the motion for judgment of acquittal and dismissed the OWI charge against Bond. This court granted the State's application for discretionary review.

Our scope of review is for the correction of errors at law. Iowa R.App.P. 4. Where, as here, the issue is not one of fact but rather one of statutory interpretation and application, we are not bound by the trial court's determinations of law. *State v. Davis*, 271 N.W.2d 693, 695 (Iowa 1978).

The crux of the issue in the present case is whether the substance Toluene is considered a drug within the purview of section 321J.2. The word "drug," however, is not defined under section 321J.2. When a statute's terms are unambiguous and its meaning plain, there is no room for second-guessing legislative intent. *State v. Burgs*, 479 N.W.2d 323, 324 (Iowa 1992). When we are called upon to interpret statutes, our ultimate goal is to ascertain and give effect to the legislature's intent. *Ayers v. Straight*, 422 N.W.2d 643, 645 (Iowa 1988). We search for the legislature's intent as shown by what it actually said, rather than what it should or might have said. *State v. Jones*, 464 N.W.2d 241, 242 (Iowa 1990). Words used in the statute should be given their ordinary meaning, unless it is clear from a reading of the statute that a different meaning was intended or unless such a construction would defeat the manifest intent of the legislation. *Peterson v. Schwertley*, 460 N.W.2d 469, 471 (Iowa 1990).

Iowa Code section 321J.2(1)(a) provides, in pertinent part, that a person commits the offense of operating while intoxicated if the person has operated a motor vehicle while under the influence of alcohol *or other drug* or a combination of such substances. While this section does not define the word "drug," other sections of the Code do address this question. Pursuant to Iowa Code section 155A.3(13) (1991), "drug" is defined as:

13. "Drug" means one or more of the following:

a. A substance recognized as a drug in the current official United States Pharmacopoeia and National Formulary, official Homeopathic Pharmacopoeia, or other drug compendium of any supplement to any of them.

b. A substance intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in humans or other animals.

c. A substance, other than food, intended to affect the structure or any function of the body of humans or other animals.

d. A substance intended for use as a component of any substance specified in paragraph "a", "b", or "c".

e. A controlled substance.

Iowa Code chapter 203B, the Iowa Drug, Device, and Cosmetic Act, also adopts a similar definition of the word "drug." Iowa Code § 203B.8. It appears that pursuant to the definitions provided by these statutes, a "drug" may be considered any substance, or component thereof, that is intended by the user to affect the structure or function of the body, as well as those substances recognized as "drugs" by national and official publications.

We do not believe the legislature intended to narrowly define the word "drug" under section 321J.2, but rather intended the definition to extend beyond a technical definition to include any substance that affects the body so as to impair an individual's ability to operate a motor vehicle. We believe an open definition of "drug" as applied to section 321J.2 is in keeping with the general purpose of chapter 321J, which is to reduce the holocaust on our public highways caused by persons driving while under the influence of alcohol or other drugs. We believe the legislature was farsighted enough to realize that, as technology expands, new drugs used for a wide variety of purposes will be created and that, in the hands of the wrong driver, these drugs may cause death or injury.

Bond argues that Toluene is not listed as a controlled substance, nor is it listed in any national or official government publication as a drug. Bond also points out that Toluene, as a component of a cleaning sol-

vent, is not intended to affect the structure or function of the body, and therefore is not a drug under section 321J.2. Toluene is a light, mobile, liquid, aromatic hydrocarbon that is used chiefly as a solvent, component of dyes, and in pharmaceuticals. Webster's Third International Dictionary 2405 (3d ed. 1965).

At trial, Michael Rehberg testified that Toluene acts as a depressant on the central nervous system much the same way alcohol affects the body. When sniffed, it affects the human system as an intoxicant. Deputy Dolleslager testified concerning Bond's erratic driving, lethargic manner, and his failure to successfully perform field sobriety tests.

We believe it is clear from the facts of the present case that Toluene has an effect similar to alcohol on the human body and that it is a "drug" for purposes of section 321J.2. We also find that Toluene falls within the definition of a "drug," pursuant to Iowa Code sections 155A.3(13) and 203B.2(8) as a substance, or component thereof, intended to affect the function of the body. We find support for our holding in *State v. Broadrick*, 620 P.2d 450, 451 (Okla.Crim.App.1980), wherein the Oklahoma Court of Criminal Appeals, upon consideration of an almost identical case, ruled that Toluene was a drug within the purview of 63 Oklahoma Statute 1971, section 1–1401(a) as an article intended for use as a component in pharmaceuticals or as an article intended to affect the function of the body.

We therefore find the trial court erred in holding that Toluene was not a "drug" for purposes of section 321J.2. Double jeopardy, however, prohibits retrial on Bond's OWI charge because the trial court granted Bond's motion for acquittal. *See* U.S. Const. amends. V, XIV; *State v. Wallace*, 475 N.W.2d 197, 202 (Iowa 1991) (double jeopardy prohibits retrial on willful injury offense because the jury acquitted defendant).

REVERSED.